Michael J. McCue
Nevada Bar No. 6055
MMcCue@LRRLaw.com
Jonathan W. Fountain
Nevada Bar No. 10351
JFountain@LRRLaw.com
Meng Zhong
Nevada Bar No. 12145
MZhong@LRRLaw.com
LEWIS ROCA ROTHGERBER LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996
702.949.8200 (tel.)
702.949-8398 (fax)

Attorneys for Plaintiff
MGM Resorts International

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MGM RESORTS INTERNATIONAL, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>M LIFE, INC., a Nevada corporation; M'LIFE WELLNESS, LLC, a Nevada limited liability company; M'LIFE NEVADA, LLC, a Nevada limited liability company; DANIEL LUTZ, an individual; and DARVIN GOMEZ, an individual,<br><br>Defendants. | Case No.:   2:14-cv-01510<br><br>**COMPLAINT** |

For its Complaint, Plaintiff MGM Resorts International ("Plaintiff" and/or "MGM") alleges the following:

**NATURE OF THE ACTION**

1. This is an action by MGM for trademark dilution, unfair competition and cybersquatting arising out of Defendants' unauthorized and unlawful use in commerce of MGM's federally registered M LIFE trademarks in connection with Defendants' operation of a medical marijuana business and related website, mlifewellness.com.  In this action, MGM seeks injunctive

-1-

4933879_1

relief, damages, attorneys' fees and costs.

**JURISDICTION**

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1338, because MGM's claims arise under the federal trademark laws. This Court has supplemental jurisdiction over MGM's state and common law claims under 28 U.S.C. § 1367, because those claims are related to claims under this Court's original jurisdiction and form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over the Defendants because they are all located and domiciled in the State of Nevada and the exercise of personal jurisdiction over the Defendants is reasonable.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b), because jurisdiction is not founded solely on diversity of citizenship and a substantial part of the events or omissions giving rise to MGM's claims occurred, or a substantial part of property that is the subject of this action, is situated in this judicial district.

**PARTIES**

5. Plaintiff MGM Resorts International (defined above as "MGM") is a publicly traded Delaware corporation whose principal place of business is located in Las Vegas, Nevada.

6. Defendant M Life, Inc. is a Nevada corporation whose principal place of business is located in Clark County, Nevada.

7. Defendant M'Life Wellness, LLC ("M'Life Wellness") is a Nevada limited liability company whose principal place of business is located in Clark County, Nevada.

8. Defendant M'Life Nevada, LLC ("M'Life Nevada") is a Nevada limited liability company whose principal place of business is located in Clark County, Nevada. Upon information and belief, M'Life Nevada is the managing member of M'Life Wellness.

9. Defendant Daniel Lutz ("Lutz") is an individual who resides in Clark County, Nevada. Upon information and belief, Lutz is a managing member and officer of M'Life Nevada.

10. Defendant Darvin Gomez ("Gomez') is an individual who resides in Clark County, Nevada. Upon information and belief, Gomez is a managing member and officer of M'Life

-2-

4933879_1

Nevada.

## ALLEGATIONS COMMON TO ALL CLAIMS

11. MGM is one of the world's leading global hospitality companies, operating a portfolio of destination resort brands, including Bellagio, MGM Grand, Mandalay Bay and The Mirage, among others.

12. M life is MGM Resorts International's guest rewards program that gives members the power to earn rewards for the amount they spend at fifteen of MGM's properties: Aria, Beau Rivage, Bellagio, Delano Las Vegas, Excalibur, Gold Strike Tunica, Luxor, Mandalay Bay, MGM Grand, The Mirage, Monte Carlo, New York-New York, The Signature at MGM Grand, MGM Grand Detroit, and Vdara. Rewards include, among other things, discounts, comps, upgrades, exclusive special offers, invitations to members' only events, presale access to concert and show tickets, and M life Moments: signature experiences such as choosing the music for the dancing fountains at the Bellagio, getting a private cooking lesson with a world-renowned chef, or swimming with the dolphins at the Mirage.

13. MGM launched the M life program in January 2010. Since that time, MGM has spent tens of millions of dollars to advertise and promote the M life program in a variety of media, including, on the internet and through billboards, print ads, television ads, radio ads, brochures, magazines, social media, and on property advertising. MGM also markets the M life program through certain dedicated means, including the M life website located (at http://www.mlife.com); M life TV, the exclusive in-room channel at MGM's resorts; the MLifeTV YouTube channel; M life magazine; and social media including the M life Facebook page, the M life Twitter feed where members can share their favorite Las Vegas moments using #LivetheMlife, and the M life mobile smartphone application that allows members to manage their M life account.

14. Upon information and belief, tens of millions of consumers have been exposed to M life marketing. The M life program has numerous members who have earned and received rewards through the M life guest rewards program.

15. MGM owns several federal trademark registrations for the M life mark and related trademarks on the Principal Register of the United States Patent and Trademark Office ("USPTO")

including:

| Mark | Reg. No. | Class/Goods & Services |
|---|---|---|
| **M LIFE** | 4092023 | 43: Hotel and restaurant services for preferred customers |
| **M LIFE TV** | 4172398 | 38: Broadcasting of video programming in the fields of entertainment, casinos and general interest via the internet and in-room television |
| **M LIFE TV** | 4172400 | 41: Entertainment and educational services, namely, an on-going series in the fields of entertainment, casinos and general interest provided through webcasts and in-room television programming |
| **M LIFE** | 4023626 | 41: Casinos; Providing casino services featuring a casino players rewards program |
| **M LIFE** | 4023627 | 35: Customer loyalty services, namely, customer loyalty programs featuring loyalty coupons and loyalty points that provide casino benefit to reward repeat customers |
| **M LIFE CURATED LIVING** | 4495112 | 35: Customer services in the field of residential real estate |

(Collectively, with MGM's common law rights, the "M LIFE Marks".)  MGM's federal trademark registrations for the M LIFE Marks are valid and subsisting, and have not been abandoned, cancelled, or revoked.

16. Based on the widespread recognition of the M LIFE Marks, in Las Vegas, Nevada, and throughout the United States and based on other relevant factors, the M LIFE trademarks have become famous in the State of Nevada and throughout the United States.

17. Based on its rights in the famous M LIFE Marks, MGM has the right to stop others from using the same or similar marks for related goods and services and even for unrelated goods and services.

**The Defendants' Unlawful Conduct**

18. Defendants recently began using the M'LIFE mark in commerce to advertise and promote a medical marijuana dispensary and medical marijuana education and consulting services under the business name M'Life Wellness at 2800 S. Highland Drive, Las Vegas, Nevada.

19. Defendants formed their corporate entities in July 2014 and registered their domain

-4-

4933879_1

name <www.mlifewellness.com> domain name with GoDaddy.com, Inc. ("GoDaddy") on July 16, 2014.

20. Defendants began using the M'LIFE mark long after MGM adopted and registered the M LIFE Marks and after they became famous.

21. Defendants' use of the M'LIFE mark is likely to dilute the distinctiveness of the M LIFE Marks through blurring and tarnishment.

22. MGM's counsel has sent a cease and desist letter to M'Life Wellness and Lutz demanding that they immediately cease and desist from any and all use of the M LIFE trademarks and provide a written response to Plaintiffs' counsel by September 12, 2014. Defendants responded but did not agree to cease and desist from their use of the M'LIFE mark.

**COUNT I**
(Trademark Dilution under
the Lanham Act, 15 U.S.C. § 1125(c))

23. MGM incorporates the allegations in the preceding paragraphs as if fully set forth herein.

24. The M LIFE Marks have become famous in the United States within the meaning of the Federal Trademark Dilution Act as amended, inasmuch as:

    a. The M LIFE Marks are suggestive of the high quality goods and services provided by MGM at its resort properties and, therefore, the M LIFE Marks are inherently distinctive. In addition, the degree of acquired distinctiveness consumers associate with the M LIFE Marks is high given the millions of dollars MGM has spent to advertise and promote its M life guest rewards program;

    b. MGM has continuously used the M LIFE Marks in connection with its guest rewards program since January 2010;

    c. MGM has extensively and continuously advertised and promoted its M life guest rewards program using the M LIFE Marks within the State of Nevada and throughout the United States since January 2010. It has advertised its M life guest rewards program at its 12 resort properties located in Nevada. It has advertised on billboards, nationally on the mlife.com website, nationally and locally in magazines, and nationally and locally in television and radio ads

-5-

disseminated throughout the United States and the State of Nevada;

      d.    MGM has used the M LIFE Marks to advertise and promote its M life guest rewards program nationally, through print advertisements appearing in magazines and other publications distributed nationally, through the mlife.com website, and through the M life mobile smartphone application;

      e.    MGM has used the M LIFE Marks at both its brick-and-mortar resort properties, the mlife.com website, and through the M life mobile smartphone application;

      f.    The degree of recognition of the M LIFE Marks is extremely high among consumers nationally as well as consumers located in the State of Nevada, where MGM owns and operates 12 major resort hotel-casinos. In contrast, medical marijuana is a fledgling business concept in the State of Nevada and consumers are not likely to have a high degree of recognition of Defendants' M'Life mark;

      g.    Like MGM, the Defendants are using their confusingly similar M'Life mark on an Internet website, mlifewellness.com, and at a physical location in Clark County, Nevada; and

      h.    The M LIFE Marks are registered on the Principal Register of the United States Patent and Trademark Office.

25. Defendants' use of the M'LIFE mark constitutes dilution by tarnishment. Defendants' have created an association in the mind of the consuming public between MGM's M LIFE Marks and Defendants' marijuana business arising from the similarity between the M'LIFE mark and the M LIFE Marks. This association has and is likely to continue to harm the reputation of MGM's famous M LIFE Marks.

26. The Defendants began using the M'LIFE mark after the M LIFE Marks became famous.

27. The Defendants' use of the M'LIFE mark is likely to dilute the distinctiveness of MGM's M LIFE Marks within the meaning of the Federal Trademark Dilution Act.

28. As a direct and proximate result of Defendants' conduct, MGM has suffered, and will continue to suffer, irreparable injury and damages in an amount to be determined at trial.

-6-

4933879_1

**COUNT II**
(Trademark Dilution under N.R.S. § 600.435)

29. MGM incorporates the allegations in the preceding paragraphs as if fully set forth herein.

30. The M LIFE Marks are "Marks" as defined by N.R.S. § 600.260.

31. The M LIFE Marks have become famous in the State of Nevada within the meaning of N.R.S. § 600.435, inasmuch as:

   a. The M LIFE Marks are suggestive of the high quality goods and services provided by MGM at its resort properties and, therefore, the M LIFE Marks are inherently distinctive. In addition, the degree of acquired distinctiveness consumers associate with the M LIFE Marks is high given the millions of dollars MGM has spent to advertise and promote its M life guest rewards program;

   b. MGM has continuously used the M LIFE Marks in connection with its guest rewards program since January 2010;

   c. MGM has extensively and continuously advertised and promoted its M life guest rewards program using the M LIFE Marks within the State of Nevada and throughout the United States since January 2010. It has advertised its M life guest rewards program at its 12 resort properties located in Nevada. It has advertised on billboards, nationally on the mlife.com website, nationally and locally in magazines, and nationally and locally in television and radio ads disseminated throughout the United States and the State of Nevada;

   d. MGM has used the M LIFE Marks to advertise and promote its M life guest rewards program nationally, through print advertisements appearing in magazines and other publications distributed nationally, through the mlife.com website, and through the M life mobile smartphone application;

   e. MGM has used the M LIFE Marks at both its brick-and-mortar resort properties, the mlife.com website, and through the M life mobile smartphone application;

   f. The degree of recognition of the M LIFE Marks is extremely high among consumers nationally as well as consumers located in the State of Nevada, where MGM owns and

operates 12 major resort hotel-casinos. In contrast, medical marijuana is a fledgling business concept in the State of Nevada and consumers are not likely to have a high degree of recognition of Defendants' M'Life mark;

       g.      Like MGM, the Defendants are using their confusingly similar M'Life mark on an Internet website, mlifewellness.com, and at a physical location in Clark County, Nevada; and

       h.      The M LIFE Marks are registered on the Principal Register of the United States Patent and Trademark Office.

32. The Defendants began making commercial use of the M'LIFE mark after the M LIFE Marks became famous.

33. The Defendants have been engaged in the "commercial use" of the M'LIFE mark as that term is defined by N.R.S. § 600.435(5)(a), in connection with their operation, advertisement, and promotion of a medical marijuana business, including in connection with sales and offers to sell goods and services related to medical marijuana.

34. The Defendants' commercial use of the M'LIFE mark has caused and is likely to continue to cause dilution of the distinctiveness of MGM's famous M LIFE Marks within the meaning of N.R.S. § 600.435.

35. Defendants' use of the M'LIFE mark constitutes dilution by tarnishment. Defendants' have created an association in the mind of the consuming public between MGM's M LIFE Marks and Defendants' marijuana business arising from the similarity between the M'LIFE mark and the M LIFE Marks. This association has and is likely to continue to harm the reputation of MGM's famous M LIFE Marks.

36. The Defendants' commercial use of the M'LIFE mark has, at all times, been intentionally and/or willfully designed to dilute the distinctiveness of MGM's famous M LIFE Marks.

37. As a direct and proximate result of Defendants' conduct, MGM has suffered, and will continue to suffer, irreparable injury and damages in an amount to be determined at trial.

38. Pursuant to N.R.S. § 600.435 and N.R.S. § 600.430, MGM is entitled to: (a) an

1 injunction enjoining the Defendants' from making any further commercial use of the M'LIFE 2 mark; (b) an award of money damages including, (i) up to three times all profits Defendants 3 derived from their willful and wrongful commercial use of the M'LIFE mark, and (ii) up to three 4 times all damages suffered by MGM as a result of Defendants' willful and wrongful commercial 5 use of the M'LIFE mark; and (c) an award of costs and reasonable attorneys' fees.

**COUNT III**
(Unfair Competition under
the Lanham Act, 15 U.S.C. § 1125(a))

8   39.  MGM incorporates the allegations in the preceding paragraphs as if fully set forth 9 herein.

10   40.  As set forth above, the Defendants recently began using the M'LIFE mark in 11 commerce to advertise and promote a medical marijuana dispensary and medical marijuana 12 education and consulting services under the business name M'Life Wellness at 2800 S. Highland 13 Drive, Las Vegas, Nevada, and on the <www.mlifewellness.com> website.

14   41.  The Defendants' use of the M'LIFE mark is a false designation of origin which is 15 likely to cause confusion, to cause mistake and to deceive as to the affiliation, connection or 16 association of Defendants with MGM and as to the origin, sponsorship, or approval of Defendants' 17 goods and services by MGM.

18   42.  The Defendants' use of the M'LIFE mark in commerce has, at all times, been 19 willful, deliberate, and intentional.  The Defendants' use of the M'LIFE mark in commerce was 20 designed to usurp and wrongfully trade off of the substantial investment and goodwill MGM has 21 made and developed in its M LIFE Marks.

22   43.  The Defendants' use of the M'LIFE mark in commerce constitutes unfair 23 competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants have used in 24 connection with goods and services a false designation of origin, a false or misleading description 25 and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive 26 as to the affiliation, connection, or association of Defendants with MGM and as to the origin, 27 sponsorship, and approval of Defendants' goods, services, and commercial activities by MGM.

28   44.  As a direct and proximate result of Defendants' conduct, MGM has suffered, and

will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**COUNT IV**
(Cybersquatting under
the Lanham Act, 15 U.S.C. § 1125(d))

45. MGM incorporates the allegations in the preceding paragraphs as if fully set forth herein.

46. The Defendants have registered, trafficked in, and/or used the <www.mlifewellness.com> domain name.

47. The <www.mlifewellness.com> domain name is confusingly similar to MGM's M LIFE Marks

48. Upon information and belief, the Defendants have or had a bad faith intent to profit from the M LIFE Marks. As a direct and proximate result of Defendants' conduct, MGM has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**PRAYER FOR RELIEF**

**WHEREFORE**, MGM prays that the Court enter judgment in their favor and against Defendants, and that the Court:

A. Enter a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116(a), prohibiting the Defendants and their respective officers, agents, servants, employees, and/or all other persons acting in concert or participation with them, from using the M LIFE trademarks, or any confusingly similar variations thereof;

B. Enter a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116(a) and 15 U.S.C. § 1125(d)(1)(C), prohibiting the Defendants and their respective officers, agents, servants, employees, and/or all other persons acting in concert or participation with them, from using the M LIFE trademarks, or any confusingly similar variations thereof, in any Internet domain name, and requiring any registrar of the domain name <www.mlifewellness.com> to immediately place the domain name on hold and lock, prohibiting its transfer, and, upon the entry of judgment in MGM's favor or further order of the Court, transferring the registration for the

domain name to MGM or its designee;

C. Enter an order awarding MGM compensatory, consequential, statutory, and/or exemplary damages in an amount to be determined at trial;

D. Enter an order awarding MGM reasonable attorneys' fees under the Lanham Act;

E. Enter an order awarding MGM costs incurred in connection with this matter; and

F. Enter an order awarding MGM such other and further relief as the Court deems just and equitable.

Dated this 17th day of September, 2014.

LEWIS ROCA ROTHGERBER LLP

By: /s/ Michael J. McCue
Michael J. McCue
Jonathan W. Fountain
Meng Zhong
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996

Attorneys for Plaintiff
MGM Resorts International

4933879_1